In re Stanley L. SCHLICHTER and Doris L. Schlichter, his wife, Individually and Jointly, Debtors.

AMERICAN BANK & TRUST CO. OF PA., Plaintiff,

v.

Stanley L. SCHLICHTER and Doris L. Schlichter, his wife, and James J. O'Connell, Esquire Trustee, Defendants.

Bankruptcy No. 80–01179K.
Adv. No. 82–0535K.

United States Bankruptcy Court,
E. D. Pennsylvania.

Aug. 23, 1982.

Harris F. Goldich, Norristown, Pa., for plaintiff.

Edward Cohen, Philadelphia, Pa., for defendants/debtors.

David S. Fishbone, Philadelphia, Pa., for defendant/trustee.

Dale E. Lapp, Lancaster, Pa., for Horst Const. Co.

James J. O'Connell, Philadelphia, Pa., trustee/defendant.

Barry Kerchner, Pottstown, Pa., for Whitney Kerchner.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case comes before the Court on a complaint for relief from the automatic stay filed by the major secured creditor, American Bank and Trust Co. of Pa. The sole issue before the Court is whether the automatic stay imposed by § 362 of the Bankruptcy Code should be terminated pursuant to § 362(d)(2). The plaintiff alleges that the debtors and the trustee have no equity in the property to benefit the estate. The Court, however, finds that the value of the property is in excess of the stipulated value of the liens. An Order will be entered denying the plaintiff's prayer for relief.[1]

The underlying bankruptcy case was commenced under Chapter 11 of the Bankruptcy Code in 1980. The debtor was unable to propose an acceptable plan of reorganization. The Court, therefore, converted the case to Chapter 7 and appointed James J. O'Connell, Esquire, as the Interim Trustee. The American Bank, thereafter, filed the instant complaint.

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Trial was held on May 18, 1982. At the trial, all parties stipulated that there was a total of $1.1 million in valid liens against the property. Counsel further stipulated that the only issue before the Court was the question of the debtors' equity in the property. The sole factual determination to be rendered by the Court was the fair market value of the property. If there would be no equity above the secured claims, American Bank would be entitled to relief from the stay. 11 U.S.C. § 362(d)(2).

Determining the value of the real property in question is a complicated matter. The debtors hold title to over 208 acres in Limerick Township of Montgomery County. An 18-hole golf course occupies approximately 60% of the land. There are also several residential premises. The remaining property, approximately 35% of the total acreage, is undeveloped. Zoning of the property is a mixed bag of high and low density residential and light industrial uses.

The subject property is located in a predominantly rural area. The Township contains a sprinkling of small business and light industrial locations. The property, furthermore, is located less than three (3) miles from the Limerick Nuclear Power Plant.

When the Court is faced with a determination of market value for a property of this size, the testimony of professional appraisers is vital. The plaintiff introduced the testimony and appraisal report of Philip S. Guckes. Although Mr. Guckes has had substantial experience as an appraiser, he does not hold an MAI or SREA designation.

Plaintiff's appraiser performed six (6) separate valuations and valued the property as six (6) distinct parcels. Mr. Guckes determined the highest and best use of the property according to the market available for these separate parcels. The smaller parcels, ranging in size from 9 acres down to less than 1 acre, were to be sold for either residential or commercial development. The largest parcel contained the golf course and a large tract of undeveloped land. He recommended that this piece be held for interim operation as a golf course until such time as there was a demand for real estate in the area. Mr. Guckes stated that, in his opinion, the current real estate market was "flat".

The total value assigned to the property by Mr. Guckes was $913,000. Numerous factors contributed to his low valuation. The major problem, which he found, was the complete unavailability of municipal sewage disposal facilities. In addition, he testified that the soil was unsuitable for septic disposal. Although electric and telephone services are available, the lack of on-site water and any sewer service seriously detracts from the value of the property.

Aside from the sewage problem, Mr. Guckes felt that this area of the county had little potential for immediate development. A proposed, and partially completed, extension to the Schuylkill Expressway would run within a few miles of the subject property. In the opinion of both Mr. Guckes and Mr. Reidy, plaintiff's other witness, the opening of this highway will not increase development in the area nor add to the value of this property.

The Trustee also introduced testimony from a professional appraiser. William T. Gleason, who holds an MAI designation, testified on behalf of the Trustee. His appraisal was in direct contradiction to the pessimistic view taken by Mr. Guckes. Mr. Gleason found the highest and best use of the property to be high-density residential development adjacent to the golf course. He envisioned the golf course continuing in operation with townhouse and apartment developments overlooking the fairways. This development scheme would be consistent with existing zoning.

Mr. Gleason's appraisal, however, is based on two (2) large and nonexistent assumptions. First, that a plan of subdivision would be approved by the appropriate governing body as required by the Pennsylvania Municipalities Planning Code. 53 Pa. Stat.Ann. § 10508. (Purdon). The second major assumption is that the spray irrigation method of sewage disposal, often proposed by Mr. Schlichter, would be approved by the Department of Environmental Re-

sources. The Trustee was unable to present any evidence that there was any valid basis for either of these assumptions. The Court, therefore, cannot agree with Mr. Gleason's valuation of $2.5 million for the entire Schlichter holdings.

On the other hand, Mr. Gleason's appraisal considered the real estate as a unit in contrast to the piecemeal approach taken by the plaintiff. This method is favored by the Court, as it tends to reflect a truer value for the property.

Mr. Gleason also testified that the Limerick Township area is ripe for development. The Court found no· evidence to support such a sanguine viewpoint. The comparable sales upon which the Trustee's appraiser based his valuation are all in highly developed or developing residential areas. Limerick Township is composed largely of single family dwellings, farms, and small businesses. Presently, there is no demand in the area for high-density housing.

On the opposite side, by treating the property in a piecemeal fashion, Mr. Guckes has ignored any potential developmental aspect the land may have. In addition, although the Court found Mr. Guckes to be an expert, he is not a certified appraiser. This factor weighs slightly against his credibility.

The Trustee raised the issue that, in 1976, Mr. Guckes' firm appraised this property at $3.1 million. The Court finds that this prior appraisal is not relevant to the case at bar. Conditions in the real estate market have undergone a drastic change since 1976. In addition to the accident at Three Mile Island, which has adversely affected the reputation of the Limerick Plant, the 1976 appraisal was based on the same faulty assumptions as the report of Mr. Gleason.

On the balance, the Court finds that $913,000 does not represent the fair market value of the property. The Trustee's valuation of $2.5 million, however, is also unsupported by the evidence. The Court finds the fair market value of the property to be $1.25 million.

The liens are stipulated to be $1.1 million. An equity of $150,000 appears to be available for the estate. The Court will, as a result, deny the plaintiff's request for relief. Mindful of the sizeable amount of debt involved in the case, however, the Court will review the matter in approximately 120 days. The Trustee understands that secured creditors cannot be kept at bay forever. If significant progress towards a sale is not evident, American Bank may be entitled to relief.